**E-FILED on** 3/27/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARON FOSTER, JR.,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C-07-03782 RMW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 10, 11]** |

Plaintiff Aron Foster, Jr. ("Foster") brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) for judicial review of a final decision by the defendant Commissioner of Social Security (the "Commissioner") denying Foster's claims for disability insurance benefits and Supplemental Security Income under the Social Security Act. Foster has filed a motion for summary judgment. Alternatively, Foster moves to remand the case for further administrative proceedings. The Commissioner opposed the motion and filed a cross-motion for summary judgment. The court has considered the moving and responding papers and the entire administrative record. For the reasons

set forth below, the court denies Foster's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

## I. BACKGROUND

### A. Procedural History

On March 7, 2005, Foster filed applications for disability insurance benefits and Supplemental Security Income alleging disability since December 1, 2002.[1] Administrative Transcript ("Tr.") 60-65. His application was denied initially on August 10, 2005 and also upon reconsideration on February 9, 2006. Tr. 47-51, 53-58. Foster requested a hearing and appeared before an Administrative Law Judge ("ALJ") on November 9, 2006. Tr. 219-45. After considering the case, the ALJ denied Foster's claims. Tr. 19-28. The ALJ found that Foster was not disabled because he could perform work existing in significant numbers in the national economy. Tr. 26-28. Foster subsequently requested a review of the ALJ's decision. Tr. 4-6. On May 24, 2007, the Appeals Council denied the request finding no reason for review. *Id*. Consequently, the ALJ's decision became the Commissioner's final decision.

### B. Foster's Age, Educational, and Vocational History

Foster, born December 6, 1950, was 52 years old at the onset date of his alleged disability (December 1, 2002), and 55 years old at the time of the hearing. Tr. 222-23. He completed high school through the 11th grade before joining the military. Tr. 222, 242. After leaving the military, he enrolled in college and completed several courses. Tr. 242. Between 2003 and 2006, he intermittently took college classes. Tr. 242.

From 1971 and 2002, Foster worked as a carpenter hanging drywall. Tr. 223-24. He testified that since 2002, his ongoing back, knee, and leg problems have impacted his ability to work. On occasion, however, he continued to work through the pain in 2003 and 2004. *See* Tr. 223-

---

[1] The court notes two inconsistencies between the record and Foster's memorandum in support of his motion for summary judgment. In Foster's motion, it states Foster's date of birth is December 8, 1950 and the alleged onset date of his disability is December 2, 2002. Mot. at 3:22-4:1. However, multiple documents indicate Foster's date of birth is December 6, 1950, including this medical records, his application for disability insurance benefits, and his application for supplemental security income. *See e.g.,* Tr. 133, 60, 63. Similarly, multiple sources indicate Foster's alleged onset date is December 1, 2002. *See e.g.,* Tr. 60, 63, 73, 81. Since Foster does not raise a dispute as to these dates, the court uses the original dates as identified by the ALJ.

26; s*ee also* 91. In 2003 and 2004, Foster's FICA Earnings and DISCO DIB Insured Status Report indicate he received wages of $1943.38 and $8,528.15 respectively. Tr. 66-69, 70-71. For 2004, his FICA Earnings list twelve different employers. *See* Tr. 68-69. Foster testified that only one of his jobs for 2004 lasted longer than three months. Tr. 238.

**C. Foster's Medical History**

On April 1, 2002, Dr. Sophia Kim at Kaiser Permanente in Santa Clara, California examined Foster. Tr. 176; *see* Tr. 185. Foster complained that he was tired and had no energy. Tr. 176. Dr. Kim noted that Foster was taking Zoloft for depression and prescribed him Paxil. Tr. 176-77. Dr. Kim ordered an abdominal ultrasound, which was performed on April 3, 2002 and revealed no significant abnormality. Tr. 185.

On August 15, 2003, Dr. Nathaniel Cohen at Kaiser Permanente performed an orthopedic consultation on Foster. Tr. 179. Foster complained of pain in his left leg. *Id.* The physical exam revealed wounds on his left knee, presumably from surgery performed in early 2002[2], had healed. *Id.* An x-ray taken of the knee showed mild arthritis and evidence of degenerative changes. *Id.* Foster's strength was "5/5 in his lower extremities." *Id.* Dr. Cohen's diagnosis evaluation was spinal stenosis and he referred Foster to Integrative Medicine. *Id.*

On September 22, 2003, Dr. Kim once again examined Foster. Tr. 180-81. Foster complained of left side pains and spasms. Tr. 180. Viocodin was "not helping as much." *Id.* Dr. Kim noted that Foster ran out of Paxil early because he was taking it at a dosage higher than prescribed. *See* Tr. 177, 180. Dr. Kim's diagnosis impression was sciatica. Tr. 180. Dr. Kim noted that Foster did not visit with Integrative Medicine. *Id.*

On December 27, 2004, Foster visited Kaiser Permanente's Emergency Department complaining of back spasms on his right side and weakness in his left-lower extremities. Tr. 182. Foster told his examining doctor, Dr. Garmel, that physical therapy "didn't work." *Id.* Dr. Garmel's discharge diagnosis stated Foster had: (1) back spasm/pain, (2) narcotic abuse/addiction, and (3) tobacco addiction. Tr. 183. Dr. Garmel further noted that Foster had symptoms of depression and

---

[2] Foster has surgery on his left knee to repair his ACL in January of 2002. Tr. 172-5. He underwent physical therapy until March of 2002 when he stopped attending his appointments. Tr. 186-89, 191.

anxiety, and was taking Paxil and Vicodin. Tr. 182. Dr. Garmel instructed Foster to: (1) apply ice to his back, (2) take Advil as needed for pain, (3) follow up with his physician the following day regarding his condition, and (4) make an appointment to see Dr. Kim in three to five days. Tr. 184. There is no evidence that Foster subsequently followed up or made an appointment to see Dr. Kim. *See* Tr. 170-91.

On June 23, 2005, at the request of the State of California acting on behalf of the Social Security Administration, Dr. Tania Shertock of Health Analysis Inc. conducted a psychological evaluation on Foster. Tr. 192-95. Dr. Shertock's evaluation relied on examining Foster as well as reviewing a subset of his medical records consisting of his treatment at the Veterans Administration.[3] Tr. 192. Foster's chief complaints were lateral scoliosis (two degenerated discs causing severe pain in his left leg), anxiety, depression, and Hepatitis C. *Id.* Dr. Shertock's DSM-IV diagnosis included poly-substance dependence (in partial remission), posttraumatic stress disorder with psychotic features, major depressive disorder, antisocial personality disorder, and borderline intellectual functioning. Tr. 194-95. Foster received a GAF score of 60. Tr. 195.

Dr. Shertock assessed that Foster appeared able to "maintain concentration, persistence, and pace and is able to perform some detailed not complex tasks." Tr. 195. However, Dr. Shertock also assessed that Foster "may have difficulty adapting to work stress and changes and would have difficulty maintaining a schedule on a consistent basis." *Id.* Foster was also unable to "relate well in the interview and would be unable to appropriately interact with supervisors and co-workers in a job setting." *Id.* Additional tests showed Foster's intellectual and memory functioning are in the borderline range. Tr. 194. Dr. Shertock determined that Foster has the capacity to manage supplemental funds he might receive if approved for disability. *Id.*

---

[3] A review of the medical records from Foster's treatment at the Department of Veterans Affairs found the records are primarily related to his detoxification from a variety of addictions and do not address his back problem. Tr. 202.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; No. C-07-03782 RMW
LL                                                        4

1         That same day, June 23, 2005, Dr. Clark Gable, also associated with Health Analysis Inc.[4],

2 evaluated Foster and conducted a physical exam.  Tr. 196-98.  Dr. Gable's evaluation paperwork

3 indicates he is "Board Eligible Internal Medicine."  Tr. 198.  Dr. Gable noted Foster has "depression,

4 with no history of suicidal ideation or hospitalizations" and is currently taking Paxil.  *Id.*  He

5 assessed Foster has a functional capacity to lift, push, or pull up to 25 pounds frequently and 50

6 pounds occasionally; stand and walk up to 6 hours a day with usual breaks; and sit up to 6 hours a

7 day with usual breaks.  Tr. 198.

8         For the time period from July 2005 to September 2006, the administrative transcript contains

9 no medical treatment records.  *See* Tr. 133-91, 206-28.

10         On September 20, 2006, Foster called the Department of Veterans Affairs primarily due to

11 back pains but also complaining of bladder control problems and difficulty in walking.  Tr. 206.  The

12 triage nurse who answered Foster's call recommended he visit the emergency room.  *Id.*  No follow-

13 up visit or treatment is recorded in Foster's medical records.  *See* Tr. 206-28.

14         On August 2, 2005, Dr. Pearl Peskin completed a Psychiatric Review Technique Form for

15 Foster.  Tr. 200.  Dr. Peskin determined that while Foster suffered from an affective disorder, an

16 anxiety disorder, a personality disorder, and a history of substance addition, his impairments were

17 not severe.  *Id.*  In Dr. Peskin's credibility analysis of Foster's allegations and symptoms, Dr. Peskin

18 assessed that Foster "certainly can do the tasks he wants to do."  Tr. 203.  Further, while Foster has

19 "personality problems" and difficulty with "authority figures," these problems did not impose a

20 severe psychiatric impairment.  *Id.*

21         On February 2, 2006, Dr. Murray Krelstein reviewed and affirmed as valid Dr. Peskin's

22 evaluation of the severity of Foster's impairments.  Tr. 200, 205.  After Dr. Krelstein's approval was

23 first submitted, Dr. Krelstein decided to review the evaluation for a second time and made additional

24 comments.  Tr. 205.  Dr. Krelstein noted that Foster's psychological evaluation is partially adverse,

25 and that Dr. Peskin's evaluation is valid only on the condition that additional information was

---

[4] Although the written medical evaluations completed by Dr. Shertock and Dr. Gable differ in typeface and appearance, both are written on letterhead for Health Analysis Incorporated and include the same 1-800 phone number.  Tr. 192, 196.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; No. C-07-03782 RMW
LL         5

requested but none was available. *Id.* Dr. Krelstein was not aware whether additional information was requested. *See Id.*

### D. Foster's Hearing Testimony

At Foster's hearing, he testified that he suffers from chronic lower back pain and knee problems. Tr. 224-28. When bending down in succession, he experiences back spasms and numbness. Tr. 224-26. Despite previous treatment, his knees continue to lock up. Tr. 227. This can occur when he walks two blocks to the store, walks around his yard, or when climbing stairs. *Id.* Foster also testified to sometimes having pain when putting on and tying his shoes. Tr. 235-36. He is unable to drive a car due to difficulty associated with using the clutch. *Id.*

Foster testified to experiencing depression, anxiety, and panic attacks. Tr. 231. As a result, he has difficulty with concentrating, has memory lapses, and isolates himself from others. Tr. 232-33.

When asked about his typical daily activities, Foster testified he makes breakfast, cleans-up, sometimes reads, spends time learning to use a computer, and plays the guitar. Tr. 233. His computer use is usually limited to 15 minutes. Tr. 234. On good days, he can play his guitar for 20 to 30 minutes, but must alternative between standing and sitting while playing. *Id.*

### E. The ALJ's Five-Step Sequential Evaluation Decision

The ALJ found Foster is not disabled at the fifth step of the disability determination process. In step one, the ALJ found that Foster has not engaged in substantial gainful activity since the alleged onset date of disability. Tr. 24. In step two, the ALJ found that Foster has two severe impairments: a back disorder and low intellectual functioning. *Id.* The ALJ also found that Foster does not have a severe mental impairment. Tr. 25. In step three, the ALJ determined that Foster did not have impairments that met or equaled a listed impairment. Tr. 24. In step four, the ALJ determined that Foster has a residual functional capacity ("RFC") to lift and/or carry up to 25 pounds frequently and 50 pounds occasionally; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. Tr. 26. In addition, Foster is restricted to simple, repetitive tasks. *Id.* Based on this assessment, the ALJ also determined that Foster is unable to perform his past relevant work as a carpenter. *Id.* At step five, the ALJ, after considering Foster's

1 age, education, work experience, and RFC, determined that there are jobs that exist in significant
2 numbers in the national economy that he can perform. Tr. 27. Accordingly, the ALJ found that
3 Foster is not disabled. *Id.*

## II. Legal Standard

### A. Standard for Reviewing the Commissioner's Decision

The court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying Foster's benefits. Under section 405(g), the district court reviewing the Commissioner's decision on an application for benefits may affirm, reverse, or remand. *See Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451 (9th Cir. 1993)). However, the district court's scope of review is limited. The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. 42 U.S.C. 405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In this context, evidence is substantial if it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Charter*, 108 F.3d 978, 980 (9th Cir. 1997). To determine whether substantial evidence exists to support the ALJ's decision, the court examines the administrative record as a whole, and considers evidence both supporting and detracting from the Commissioner's conclusion. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Where evidence exists to support more than one rational interpretation, the court must defer to the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Sandgathe*, 108 F.3d at 980.

### B. Standard for Determining Disability

A person is "disabled" for purposes of receiving social security benefits if the individual is unable to engage in any substantial gainful activity due to a physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. *Ukolov v. Barnhart* 420 F.3d 1002, 1004 (9th Cir. 2005). The claimant has the burden of proving that he or she is unable to perform past relevant work. *Id*. Where the claimant meets this burden, a prima facie case of disability is established. *Thomas v. Barnhard*, 278 F.3d

1   947, 955 (9th Cir. 2002). The Commissioner then bears the burden of establishing that the claimant
2   can perform other substantial gainful work that exists in the national economy. *Id.*

3   Social Security disability cases are evaluated using a five-step, sequential evaluation process.
4   20 C.F.R. § 404.1520. In the first step, the ALJ must determine whether the claimant is presently
5   engaged in substantially gainful activity. 20 C.F.R. § 404.1520(b). If claimant is engaged in this
6   activity, the claimant is not disabled; otherwise the evaluation proceeds to step two.

7   In step two, the ALJ must determine whether the claimant has an impairment or a
8   combination of impairments that is severe. 20 C.F.R. § 404.1520(c). If not, the claimant is not
9   disabled. If the claimant's impairment or combination of impairments is severe, the evaluation
10  proceeds to step three.

11  In step three, the ALJ must determine whether the claimant's impairment or combination of
12  impairments meets or medically equals the requirements of the Listing of Impairments, 20 C.F.R. §
13  404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If the claimant's condition meets or exceeds the
14  listing requirements, the claimant is disabled. If not, the analysis proceeds to step four.

15  In the fourth step, the ALJ must determine the claimant's residual functional capacity despite
16  limitations from the claimant's impairments. 20 C.F.R. § 404.1520(e). If the claimant can still
17  perform work that the individual has done in the past, the claimant is not disabled. If he cannot
18  perform the work, the evaluation proceeds to step five. 20 C.F.R. § 404.1520(f).

19  At step five, the burden shifts to the Commissioner to demonstrate the claimant is not
20  disabled. The Commissioner must, taking into account a claimant's age, education, and vocational
21  background, show that the claimant can perform some substantial gainful work in the national
22  economy. *Tackett*, 180 F.3d at 1101; 20 C.F.R. § 404.1520(g)(1).

### III. Analysis

25  Foster alleges the ALJ: (1) erred in determining the severity of Foster's mental impairments;
26  (2) failed to conduct an appropriate evaluation of Foster's credibility determination; and (3) failed to
27  elicit testimony from the vocational expert.

**A. Severity of Foster's Mental Impairments**

Foster argues the ALJ committed a legal error when he rejected the opinion of a treating physician. Foster contends that Dr. Shertock's assessment is objective and uncontradicted evidence that Foster has a severe mental impairment. Mot. 8:14-17, 11:7-9. In particular, Foster points to Dr. Shertock's opinion that Foster: (1) might have difficulty adapting to work stress and changes; (2) would have difficulty maintaining a schedule on a consistent basis; and (3) would be unable to appropriately interact with supervisors and co-workers in a job setting. Mot. 8:8-10, Tr. 195. The ALJ found that portions of Dr. Shertock's assessment were not supported by objective medical findings, but appeared to be based on Foster's subjective complaints and history. Tr. 25. Dr. Shertock also found that Foster's grooming and hygiene were appropriate, his eye contact was normal and he was generally cooperative in the interview. Tr. 192. Dr. Shertock also noted that Foster was not in psychiatric treatment ad was no longer taking medication. On his mental status exam, Foster's speech, perception, thought content and sensorium were unremarkable. TR. 193. His fund of knowledge was average and h he was not distracted.

In assessing a claimant's impairments, an impairment is not severe if it does not significantly limit the claimant's physical or mental capacity to perform basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities refer to the abilities and aptitude necessary to do most jobs. 20 C.F.R. §§ 404.1521(b), 416.921(b). In evaluating the severity of Foster's alleged mental impairment, the ALJ considered Dr. Shertock's assessment along with the findings and opinions of treating, examining, and state agency physicians. Tr. 24-28. When relying on multiple sources, the ALJ is "responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citations removed).

The record indicates that the ALJ did not rely solely on Dr. Shertock's opinion. In addition to Dr. Shertock's assessment, some of which touched on Foster's mental health, the ALJ considered multiple sources of medical testimony. The ALJ specifically considered: (1) the April 3, 2002 abdominal ultrasound; (2) the August 15, 2003 examination by Dr. Cohen of Kaiser Permanente; (3) the intermittent treatment Foster received at Kaiser Permanente for back pain and depression during the adjudicative period; (4) the June 23, 2005 consultative internal medicine evaluation by Dr.

Gable; (5) the August 2, 2005 Psychiatric Review Technique Form completed by state agency medical consultant Dr. Peskin and affirmed valid by Dr. Krelstein on February 2, 2006; and (6) Foster's call on September 20, 2006 to the Department of Veterans Affairs regarding back pain and bladder control problems. Tr. 24-26. The ALJ also considered the lack of medical treatment records for the period from July 2005 to September 2006. Tr. 26. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (allowing the ALJ to rely not only on what the record says, but also on what it does not say).

The medical testimony referenced by the ALJ is substantial evidence that contradicts Dr. Shertock's mental severity assessment. The ALJ reasonably considered the medical treatment Foster received at Kaiser Permanente (from Drs. Kim, Cohen, and Garmel) and the Department of Veterans Affairs. Tr. 24-26. The ALJ notes that the treating sources did not refer Foster for specialized mental health treatment, nor did Foster seek such treatment independently. Tr. 25. Instead, Foster's anti-depressant medication was prescribed by his general treating physicians. *Id.*

The ALJ also relied on reports completed by state agency physicians Dr. Peskin and Dr. Krelstein, both non-examining sources. Tr. 25-26. While Foster contends that Dr. Shertock's assessment should be given greater weight, the Commissioner is entitled to rely on the opinions of non-examining sources if they are supported by independent clinical findings or other evidence in the record. *Thomas*, 278 F.3d at 957.

Here, both Dr. Peskin and Dr. Krelstein were provided with and reviewed Foster's medical record, including Dr. Shertock's psychological consultative evaluation. Tr. 203, 205. In support of the ALJ's findings, Dr. Peskin's August 2, 2005 assessment states that Foster is "cognitively capable" and "certainly can do the tasks he wants to do." Dr. Peskin further concludes that while Foster has personality problems and difficulty with authority figures, these do not constitute a valid severe impairment. Tr. 203. On the basis of the available medical evidence, Dr. Krelstein affirmed the validity of Dr. Peskin's assessment that Foster's mental impairments were not severe.[5] Tr. 200, 205.

---

[5] Dr. Krelstein's affirmation of Dr. Peskin's assessment is contingent on having asked for and not received updated information relevant to Foster's psychological evaluation. Tr. 205. Dr. Krelstein's records indicate Dr. Krelstein last requested additional information on February 2, 2006. Tr. 205.

1    The court finds the ALJ appropriately applied his discretion when according credibility to conflicting testimony.  The medical records used to support the ALJ's credibility evaluation of Dr. Shertock's medical assessment are suitable evidence.  The court finds the ALJ consideration of alternate medical opinions is proper and no legal error was committed by the ALJ in considering and relying on them.

Foster next alleges the ALJ failed to follow the special technique for evaluating mental impairments described in 20 C.F.R. § 404.1520a.  Specifically, the ALJ did not make a specific finding to the degree of limitation in each of four functional areas.[6]  20 C.F.R. § 404.1520a(c)(3).  While the ALJ did find that Foster suffers from a back disorder and low intellectual functioning, neither of these are mental impairments.  The requirement to document the findings in accordance to 20 C.F.R. § 404.1520a(e)(2) is required only if Foster has a severe mental impairment.  20 C.F.R. § 404.1520a(b)(1) ("If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.").

**B.  Consideration of Foster's Credibility**

Foster contends the ALJ did not properly consider Foster's credibility and should have given more weight to his testimony on his pain and symptoms.  Further, Foster contends the ALJ did not provide specific, clear, and convincing reason to reject Foster's testimony.

When the ALJ's interpretation is reasonable and supported by substantial evidence, it is not the role of this court to second-guess it.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  The ALJ gave Foster's testimony minimal weight, finding his testimony was not supported by

---

Foster obtained counsel to represent him in his claims for disability on March 30, 2006, at the latest. Tr. 33-34.  On April 27, 2006, Foster's counsel was notified that counsel could review the evidence in Foster's file as well as provide additional evidence in support of Foster's claims.  Tr. 41.  On September 11, 2006, Foster was notified that he could review his file before the date of his hearing and submit additional evidence.  Tr. 37.  The court notes that Foster had ample time, notice, and counsel to prepare and supply additional psychological evidence in advance of his hearing with the ALJ on November 9, 2006.

[6] The four broad functional areas identified are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; No. C-07-03782 RMW
LL                                                                                         11

objective medical evidence and was inconsistent with his medical treatment. Tr. 26. While Foster's impairments could reasonably be expected to produce the alleged symptoms, the evidence did not fully support Foster's statements concerning the intensity, persistence, and limiting effects of the symptoms. *Id.* The ALJ supported this conclusion by referring to Foster's medical history. *Id.* The ALJ reviewed Foster's medical records from his visits to Kaiser Permanente and the Department of Veterans Affairs for the type of medical treatment he was prescribed. Tr. 25-26. The court finds the ALJ's interpretation of Foster's credibility and the decision to give his testimony less than controlling weight are reasonable and supported by substantial evidence. Appropriately, this court must defer to the ALJ's decision.

Foster next alleges that the ALJ did not consider the seven factors outlined in Social Security Ruling 96-7: (1) the individual's daily activities; (2) certain characteristics of the individual's pain and other symptoms; (3) facts that precipitate and aggravate the symptoms; (4) medication the individual is taking; (5) treatment, other than medication, that the individual receives; (6) any measures other than treatment the individual uses to relieve pain or symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to his pain or symptoms.

The count finds the ALJ did properly examine these factors. The record of the hearing indicates both the ALJ and Foster's attorney questioned Foster on these factors. A sample subset of the questions asked include:

(1) "Tell us, Mr. Foster, what do you do on a typical day?" Tr. 233.

(2) "And what problems prevented you from working as of December 2002?" Tr. 224.

(3) "Did you ever have surgery for that?" Tr. 226.

(4) "And given the problems what you described with your knees and your back, how long are you able to stand before you need to sit down or take a break?" Tr. 229.

(5) "And what medication have they given you for treatment of pain?" *Id.*

(6) "What are you on now?" Tr. 230.

(7) "How often were you getting panic attacks?" Tr. 231.

(8) "And any problems with memory?" Tr. 233.

(9) "And tell us a little bit about what problems, if any, do you have in interacting with people?" *Id*.

Foster seems to concede that the record includes evidence of these factors, and only alleges that the ALJ did not consider them in his credibility analysis. Mot. 17:7-18:20. However, a disability determination inconsistent with Foster's testimony is not evidence that the ALJ did not consider these factors. Instead, the ALJ supports his conclusion by contrasting Foster's testimony to his medical findings and level of treatment. Tr. 26. Accordingly, the ALJ points to substantial evidence in the record to refute Foster's credibility and made a reasonable interpretation of his testimony in consideration of the administrative record as a whole.

**C. Failure to Elicit Testimony from a Vocational Expert**

Foster argues that the ALJ erred at step five of the sequential evaluation process by finding Foster could perform work existing in significant numbers in the national economy. Foster contends the ALJ should have obtained vocational expert testimony instead of applying the Medical-Vocational Guidelines ("Grids").

In step five, the burden shifts to the Commissioner to prove that jobs exist in the national economy that the claimant can perform given his age, education, work experience, and RFC. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner can meet this burden by either: (1) referencing to the Grids, or (2) presenting the testimony of a vocational expert. *Tackett*, 180 F.3d at 1099.

The Ninth Circuit recently held that vocational expert testimony is required when non-exertional limitations are sufficiently severe that they significantly limit the range of work permitted by the claimant's exertional limitation. *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (citing *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988)). An ALJ is required to obtain a vocational expert when the non-exertional limitations are at a sufficient level of severity such that the Grids are inapplicable to the particular case. *Id.* at 1076.

In *Hoopai*, the ALJ determined in step two of the five-step evaluation for disability that the claimant's depression was a severe mental impairment. There, the ALJ relied on the Grids and did not obtain a vocational expert. The Ninth Circuit affirmed this decision finding that substantial

evidence supported the ALJ's conclusion that the claimant's depression was not a sufficiently severe non-exertional limitation that required obtaining a vocational expert. *Id.* at 1076-77.

The claimant in *Hoopai* represents a scenario that is closer to requiring a vocational expert than in Foster's case. In Foster's case, the ALJ found that Foster did not suffer from a severe mental impairment at the step two of the evaluation. Any mental impairment suffered by Foster is thus less severe than in *Hoopai*. Foster contends that because he suffers from posttraumatic stress disorder, major depressive disorder, antisocial personality disorder, and borderline intellectual functioning, his mental impairment is more severe than the claimant in *Hoopai*. Despite this diagnosis, however, the ALJ determined that Foster's combination of impairments does not reach the level of a severe mental impairment. Consequently, Foster's non-exertional limitations are not "sufficiently severe" and the ALJ properly referenced the Grids to determine the existence of applicable jobs. No vocational expert was required.

### IV. Order

For the foregoing reasons, it is appropriate to affirm the decision of the Commissioner. Accordingly, the court denies Foster's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

DATED:     3/27/09

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Betty Herrera             betty@sackettlaw.com
Harvey Peter Sackett      hps@hpspc.com

**Counsel for Defendant:**

Mark Win                  mark.win@ssa.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   3/27/09                                    TER
                                          **Chambers of Judge Whyte**